IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
WESTERN DIVISION

| | |
|---|---|
| MEGAN LINKE, as Executor for the Estate of Clarence A. "Gus" Linke, III<br><br>Plaintiff,<br><br>-v-<br><br>ILLINOIS STATE POLICE (ISP),<br>ISP Trooper STUART BAITS,<br>Sterling Police Officer KYLE WYCKSTANDT,<br>CITY OF MORRISON POLICE DEPARTMENT, and BLACKHAWK AREA TASK FORCE,<br><br>Defendants. | Case No.<br><br><br><br><br>Jury Trial Demanded |

## COMPLAINT

Plaintiff, Megan Linke, as Executor for the Estate of Clarence A. "Gus" Linke, III (hereinafter "Gus"), by and through her attorney, complaining of Defendants ILLINOIS STATE POLICE, Illinois State Police Officer STUART BAITS, Sterling Police Officer KYLE WYCKSTANT, CITY OF MORRISON POLICE DEPARTMENT, and BLACKHAWK AREA TASK FORCE, states as follows:

## INTRODUCTION

1. On October 21. 2022, Clarence A. "Gus" Linke, III was 76 years old, living with Parkinson's Disease and Dementia, in the home he owned at 604 N. Cherry Street, Morrison, Whiteside County, Illinois.

2. On February 25, 2021, Gus' son, Aaron Linke, was released from the custody of the Whiteside County Jail, in Whiteside County Case Numbers 17 CF 261, 19 CF 63, and 19 CF 99, with an electronic monitor, solely to care for his ailing father, Gus, who by this

1

time needed round-the-clock care, due to the health problems described in Paragraph 1 above.

3. On October 21, 2022, over one dozen members of the Blackhawk Area Task Force (BATF) in full military gear and ballistic shields, including the named Defendants, forced entry into the home of Gus Linke to execute a faulty search warrant to look for drugs and weapons alleged to be in the position of Aaron Linke, and shot Gus' son, Aaron Linke, in the head; he died the following day.

4. Another live-in caregiver, Rachel Tucker, was also shot in the chaotic scene, where shots had been fired by law enforcement officers in a narrow stairway, inside Gus' Linke's home, amidst smoke from two flash-bang devices set off by law enforcement before they began firing their weapons.

5. Gus was forcibly removed from his home by the Defendants or agents within their employ; he was located over an hour after this horrific event in the back seat of a Morrison Police Department squad car, dressed in jail clothing, and covered with his own urine and feces.

6. The law enforcement officers, who breached the entryway into Gus Linke's home, knew he was the homeowner, knew Gus was living there, knew he was ill and elderly, and knew was completely innocent and ignorant of whatever criminal activity his late son, Aaron Linke, may have been involved in prior to his being shot by Stuart Baits on October 21, 2022.

7. Megan Linke, next of kin to the late Gus Linke and the Executor of his Estate, brings this action to redress the violation of Gus' civil rights under the Fourth Amendment to the

United States Constitution and to redress the tortious, reckless, willful, and wanton behavior of the Defendants under Illinois Law.

## JURISDICTION AND VENUE

8. This action is brought pursuant to 42 U.S.C. Section 1983 to redress the deprivations of Gus' rights as secured by the Fourth Amendment to the United States Constitution. This Court has jurisdiction over federal claims, pursuant to 28 U.S.C. Section 1331.

9. This action is also brought pursuant to Illinois law to redress violations of Gus' rights as secured by the law. This Court has supplemental jurisdiction over state claims, pursuant to 28 U.S.C. Section 1367.

10. Pursuant to 28 U.S.C. Section 1391(b)(2), the United States District Court for the Northern District of Illinois, Western Division is the proper venue for this action as the events giving rise to this litigation occurred within this jurisdiction.

## PARTIES

11. Plaintiff is the Executor of the Estate of Clarence A. "Gus" Linke, III (hereinafter "Gus") and is Gus' next-of-kin and daughter.

12. Clarence A. "Gus" Linke, III (hereinafter "Gus") was 76 years old and living with Parkinson's Disease and Dementia. He required 24-hour care. He was a well-known and respected resident of Morrison, Illinois, a retired high school coach and history teacher at Morrison High School, inducted to the high school's Hall of Fame.

13. Defendant Illinois State Police (hereinafter "ISP") was, during the relevant time period through the present, a law enforcement agency, coordinating the Blackhawk Area Task Force, a multi-county, multi-jurisdiction drug task force. ISP was also responsible for

hiring and training Defendant Stuart Baits, who shot Gus' son Aaron Linke in the head, at Gus' home, while Gus was home, after forcing entry to Gus' homes at approximately 5:30 a.m. on October 21, 2022 and an detonating explosive device, commonly known and referred to herein as a "flash bang, in the entry way to Gus' home as soon as they forced entry.

14. Defendant Stuart Baits was employed by ISP as a State Trooper and acting under color of law and shot Aaron Linke in the head in Gus' home, when Baits had no clear shot, could not have possibly seen a gun in the hands of the late Aaron Linke to have seen Aaron Linke at all before firing his weapon, as he claimed, and willfully, wantonly, and recklessly acted in such a way as to rob Gus of the ability to live out his days in dignity in his own home.

15. On October 20, 2022, Defendant Kyle Wyckstandt swore-in an affidavit to support a search of the residence at 604 N. Cherry Street in Morrison, Illinois for guns and illegal drugs. This affidavit was insufficient to support a lawful warrant to search the residence and the suspect related to this faulty affidavit and resulting search warrant was Aaron Linke; Defendant Wyckstandt was aware, and stated in his affidavit in support of the fateful search warrant, that Gus and one of Gus' caregivers, Rachel Tucker, lived in that residence and this was Gus' home. Yet, no distinction was made in that search warrant that would have differentiated or accounted for Gus being the innocent, but mentally incompetent, homeowner being present and occupying a different part of the residence than his two live-in caregivers, Aaron Linke and Rachel Tucker. This lack of sufficiency and specificity, and any attempt to protect the rights of Gus to be safe in his own home contributed greatly to the tragic events of October 21, 2022.

16. Defendant City of Morrison Police Department, and/or other BATF members, acting under color of law, removed Gus from his home and detained him away from his home on October 21, 2022, after his son was shot in the head in that home, without valid consent because Gus was mentally incompetent, and the City of Morrison Police Department and other BATF members knew that he lacked capacity to consent. They also committed other cruel, degrading, and tortious acts upon the person of Gus on October 21, 2022.

17. Defendant Blackhawk Area Task Force (hereinafter "BATF") is a multi-jurisdiction drug task force, overseen by the ISP. On October 21, 2022, the Blackhawk Area Task Force members violently forced their way into Gus' home, had no plan as to what needed to happen next, and voiced no concern when it was mentioned that "there's an old man in here." It was the BATF who organized over 15 law enforcement officers from various Blackhawk member agencies to dress in full military gear to attempt to force entry first to an area of the house in which there was no door, even though the affidavit, in support of the search warrant they were ostensibly at Gus' home to serve on that fateful day at 5:25-5:30 a.m., had a photograph of the house at 604 Cherry Street from several angles, and one clearly showed the front door and no other door. The lack of any plan for this operation by the BATF on October 21, 2022 was astounding, as was the excessive amount of force brought to bear with this small military-esque brigade exploding into the front door of Gus' home.

18. Defendant Kyle Wyckstandt of the Sterling Police Department was acting as a member of the BATF on October 20, 2022 when he swore to the affidavit in support of the faulty search warrant issued that day.

## **FACTS**

19. Aaron Linke was the son of Gus Linke, III.

20. Aaron Linke had been detained in the Whiteside County Jail for two years, pending trial for various felony charges, when on February 25, 2021, he was given a bond for the first time since 2019 and he was ordered to be released on electronic monitor for the express purpose of caring for his father Gus, at Gus' home at 604 Cherry Street in Morrison, Illinois, the address to which Aaron Linke was ordered to reside and "stay put".

21. The Whiteside County court order of February 25, 2021 stated that Aaron Linke would have to pay $15.00 per day for the electronic monitor, and at no time could he be behind on those payments any more than $450.00.

22. The Plaintiff has reason to believe that Aaron Linke owed more than $450.00 toward is electronic monitor fees, yet no one called him to come meet with Adult Probation.

23. The ISP set up two drug purchases through an informant, "Jill Jones" (hereinafter "Jones" or "the informant"),who was not present in court when Defendant Wyckstandt presented his affidavit to the Court. Defendant Wyckstandt also did not assert in his affidavit in support of the search warrant, issued on October 20, 2022, that the informant was someone he had worked with previously and found to be a credible source of information.

24. The ISP/BATF initiated the two drug purchases by Jones, who was wearing a "video recording device", at least one of which was monitored by BATF members from a nearby police vehicle.

25. The BATF did not initiate the two drug purchases because the late Aaron Linke had offered to sell methamphetamine to Jones; rather, it was Jones who came to law

enforcement with an offer to give them information to arrest Aaron Linke because Jones was facing new methamphetamine charges, which had not yet been turned over to the Whiteside County State's Attorney's Office for charging, and wanted consideration in that new case in return for giving them enough evidence to search Gus' residence for illegal drugs and weapons thought to be in the possession of the late Aaron Linke.

26. The drug purchases, mentioned above, were allegedly made between the informant and Aaron Linke on September 29, 2022 and October 19, 2022

27. At the time of both drug purchases, mentioned in Paragraphs 24-25 above, law enforcement agents, including Defendant Wyckstandt, were waiting for the informant in a police vehicle.

28. At the time that the ISP set up the two drug purchases on September 29, 2022 and October 19, 2022, they could have arrested Aaron Linke then, and conducted a search of Aaron Linke's portion of the Cherry Street residence, as part of a lawful arrest for one or both of those transactions, since they would have had probable cause for a warrantless search to have been executed in a quiet and orderly fashion, taking into account that this home was owned by an unwell, 76 year-old man, who required 24 hour care by October of 2022 and that a non-family caregiver also lived in some part of Gus' residence.

29. Since Aaron Linke was on an electronic monitor, Whiteside County Probation or Sherriff's Department could have called and told Aaron that they needed to see him about the battery, his fees, doing a random urine screen, etc., all ways to have executed the search warrant at a time he was not present if they were concerned about safety at the time of the two drug purchases, discussed in Paragraphs 24-27 above, due to the

informant telling police that they had seen Aaron Linke in possession of firearms in the past.

30. This search warrant, issued by a judge in Whiteside County, Illinois, was executed by over a dozen military clad, armed members of the ISP/BATF on October 21, 2022 at approximately 5:28 a.m. when it was still dark, both outside and inside the Cherry Street residence.

31. Upon their arrival and before forcing entry to Gus' home at approximately 5:28 p.m., these BATF officers spent 1-2 minutes trying to force their way into an area to the back of the Cherry Street residence, an area in which there was no door, even though they had a photograph and description of Gus' residence on Cherry Street, which showed the front door of that residence and the area they attempted to breach, an area where you can see, even in the dark, that there is no door.

32. After the BATF officers found the front door of Gus' home, they knocked and announced, "State Police, Search Warrant", gave Gus, the elderly, ill homeowner, less than 10 seconds to answer the door before they forced their way into the interior entryway of Gus' home and immediately detonated a flash bang.

33. After BATF breached Gus' front door and detonated the flash bang on October 21, 2022 at approximately 5:28 a.m., they stood for approximately 2 minutes in the dark, smoke-filled foyer area, while a security alarm was going off, trying to come up with a plan, as there clearly was none.

34. At approximately 5:30 a.m. on October 21, 2022, the dozen or so BATF agents, who were at that time already in Gus' home, began ascending the stairs leading to the 2nd floor,

8

shouting, "State Police, Search Warrant. If anyone's up there, come down with your hands up."

35. After ascending the stairs, as described in Paragraph 34 above, the BATF officers detonated another flash bang in that narrow stairway, near the top, creating even more smoke; the only light was coming from some lights these officers, in full military gear, had mounted to their helmets.

36. As the BATF officers ascended the stairs, as described in Par. 34-35 above, Defendant Baits and ISP Trooper Marvin Wagle were leading the way up, side by side, both using ballistic shields, which further limited visibility for these two officers, as seen in the body camera footage of Baits and Wagle from October 21, 2022.

37. After the second flash bang was detonated near the top of the stairs, as described in Paragraph 35 above, one of the BATF officers, presumably Stuart Baits, can be heard in the body camera footage shouting, "Hands, hands!"

38. Immediately after someone yelled, "Hands, hands!", Defendant Baits started firing his weapon, and then one or more of the officers can be heard shouting, "Shots fired, shots fired."

39. It is believed that other BATF members were outside and shot into the 2nd story of Gus' home on October 21, 2022, after the first shots were fired by Defendant Baits, with no clear sight of the late Aaron Linke and without knowing where in Gus' residence Gus or one of his live-in caregivers, Rachel Tucker, were.

40. After the shooting ceased, Aaron Linke and Rachel Tucker were discovered with gunshot wounds on the second floor of Gus' home and another person, named Logan Smith, was located unharmed on the 2nd floor of the residence, as well.

41. After the shooting stopped, one of the BATF officers can be heard asking about the "old guy", meaning Gus. The response from another member of the BATF was, "I don't give a fuck. Not our problem right now. We've got shots fired."

42. At approximately 5:31 a.m. on October 21, 2022, members of the BATF entered the 2nd floor and observed Aaron Linke on the ground, and one is heard saying, "I don't know where he's shot. Hey, handgun right behind you."; other BATF officers can be heard saying that they moved both the "rifle" and the "shotgun", so it is unclear where those guns came from or where they were at the time BATF fired into the 2nd Floor of Gus' home.

43. At 5:31:21 on October 21, 2022 an ambulance was dispatched for Aaron Linke, who was still alive, but had been shot in the head; that ambulance arrived on the scene at 5:32:39. It is unclear when that ambulance arrived at the hospital (first hospital) with Aaron Linke.

44. Shortly after Stuart Baits shot Aaron Linke in Gus' home on October 21, 2022, most of the BATF members, present at the time of the shooting, wandered around the premises, in a half-hearted search for the alleged guns and drugs, mentioned in their 10/20/22 search warrant and as they searched unknown BATF officers were heard saying on Baits and/or Wagle's body camera footage, saying things like, "There was a ton of smoke…I didn't see anything...I couldn't see anything either…I saw a knife…" Another BATF member is heard saying that when the people on the stairway shouted, "Shots fired!", it was not clear to him who fired the shots – law enforcement or someone firing at law enforcement. Defendant Baits can be heard saying that Aaron Linke had pointed a pistol at him and he was the only one saying he saw a gun of any kind before he fired and fatally shot Aaron Linke.

45. Aaron Linke was declared brain dead on October 22, 2022; his autopsy report showed that he died of a gunshot wound to the head and the manner of his death was "Homicide."

46. At some point after the shooting, law enforcement officers pointed a gun a Gus, escorted him outside, and removed him from his home.

47. It is unclear where Gus was taken or by whom, after he was removed from his own home by law enforcement officer after BATF forced there way into his home, fatally shooting his son, but Gus only uninjured caretaker, Virginia Carmen, found Gus, later the morning of October 21, 2022, in the back seat of a Morrison Police Department police car, parked behind "the hospital" and he was wearing jail attire, had a blanket wrapped around him, he was covered in his own urine and feces;

48. On October 21, 2022 Gus did not have capacity to consent to being removed from his home by law enforcement, the BATF officers could see he was not capable of giving consent to be removed from his home, he was not a suspect in a crime, and he was not under arrest.

49. After finding Gus in the condition described in Paragraph 47 above, law enforcement demanded that Virginia and Gus come down to the police station for questioning; Virginia was not permitted to get any clothing or Gus' medicine, so she stopped by a dollar store at the way to the police department for wipes and whatever she could buy to try and clean Gus up temporarily.

50. While Gus needed constant care by October 21, 2022, in the months before that time he was able to feed himself and help his caretakers to get him to a standing position; he and Virginia enjoyed going out to different area restaurants for lunch;

11

51. Gus never returned to his home and within a week of the horrific events of October 21, 2022 he lost the use of his hands or ability to help get him to a standing position.

52. On October 21, 2022, after the police were done with Gus, Virginia took him into her home to care for him, as his next-of-kin and Power of Attorney, the Plaintiff, lives in New Jersey; he was there for weeks; he kept asking when his late son, Aaron Linke, one of his caregivers before 10/21/22, was coming home.

53. Eventually, Virginia flew with Gus to the East Coast so that the Plaintiff could manage his care; she stayed for a couple of weeks, but then had to return to Illinois, coming back and forth more than once to help care for Gus.

54. Gus had to be strapped into his airplane seat for his trip to the East Coast with three straps across his body, due to his dementia, and was very unhappy about that.

55. Gus died on April 6, 2023.

**COUNT I – Violation of the Fourth Amendment – Excessive Use of Force
42 U.S.C. Section 1983
Against Defendant Baits, Defendant Wyckstandt, the Illinois State Police, and the
Blackhawk Area Task Force**

56. Plaintiff incorporates all paragraphs of this Complaint as fully set forth herein.

57. As described in this Complaint, Defendants Baits, ISP, and BATF used force that was likely to cause death or great bodily harm to Aaron Linke and the other residents of 604 Cherry Street, Morrison, Illinois on October 21, 2022, during the execution of the October 20, 2022 search warrant for Gus' residence.

58. As Described in this Complaint, Defendants Baits, ISP, and BATF's use of deadly force was objectively unreasonable based on the totality of the circumstances and as such, violated Gus' rights under the Fourth Amendment of the United States Constitution.

59. The Fourth Amendment to the United States Constitution guarantees, "The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no warrants shell issue, but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized."

60. The warrant issued on October 20, 2022, was faulty and did not pass constitutional muster, particularly as relating to Gus, in that:

   a. The information sworn to by Defendant Wyckstandt lacked sufficient indicia of reliability in that the information, leading to the two drug purchases by the informant and to obtaining the search warrant from the Court, in that the informant was not named, said informant was not present in court when the affidavit was issued by the Court, and the affidavit did not allege that the informant, Jill Jones, had been a reliable source of information in the past;

   b. The information, which was contained in the affidavit in support of the search warrant, did not lend credibility or reliability to Jill Jones' information; it instead showed that Jill Jones had been arrested for methamphetamine, no request for charges for that arrest had yet been sent over to the Whiteside County State's Attorney's Office for charging, and Jill Jones was hoping if he/she gave BATF some actionable information about drug sales, he/she might get some "consideration" as to those charges or a sentence related to those charges. Furthermore, Jones had an extensive criminal record; and

   c. The search warrant of 10/20/22 lacked sufficient particularity as to what areas in Gus' residence could be searched and what or who could be seized.

61. As a direct and proximate consequence of the actions of Defendants Baits, Wyckstandt, ISP, and BATF, Gus suffered damages, including violation of his constitutional rights and emotion and physical pain and suffering.

WHEREFORE, Plaintiff prays for a Judgment against Defendants Baits, Wyckstandt, ISP, and BATF and in favor of the Plaintiff, awarding reasonable compensatory and punitive damages, costs, attorneys' fees, and for any other relieve deemed just and fair under the circumstances.

### COUNT II – Intentional Infliction of Emotional Distress
### Illinois State Law
### Against Defendants Baits, ISP, BATF, and City of Morrison Police Department

62. Plaintiff incorporates all paragraphs of this Complaint as though fully set forth herein.

63. As described in this Complaint, the actions of the Defendants in obtaining and executing a search warrant on Gus' residence at 5:30 a.m. on October 21, 2022, was done in a reckless, indifferent, and wanton manner, such that their actions that day were so outrageous and unnecessary that it was reasonably foreseeable that those actions would cause great emotional distress to Gus.

64. The trauma of the events of October 21, 2022, at his residence and during his removal, against his will and lacking his consent, from his home by the Defendants had a negative effect on Gus' quality and duration of his life, as he died less than 6 months later, was never able to return home, and was never able to feed himself again.

65. The trauma of the events of October 21, 2022 at his residence and during his forced removal from his home that day caused great suffering to Gus.

WHEREFORE, Plaintiff prays for a Judgment against Defendants Baits, ISP, BATF, and the City of Morrison Police Department and in favor of the Plaintiff, awarding reasonable

compensatory and punitive damages, costs, attorneys' fees, and for any other relieve deemed just and fair under the circumstances.

### COUNT III – Battery
### Illinois State Law
### Against Defendants ISP, BATF, and City of Morrison Police Department

66. Plaintiff incorporates all paragraphs of this Complaint as fully set forth herein.

67. Defendants ISP, BATF, and/or the City of Morrison Police Department committed a battery against the person of Gus Linke on Octobre 21, 2022 when the physically removed him from his home and his property, undressed him and put him in jail attire, and placed in in a police patrol care when he was not capable of giving consent to this removal, the above-named Defendants knew Gus was not mentally capable of giving consent, Gus was not a suspect in a crime, Gus was not under arrest, two of his three 24-hour caregivers had just been shot in this bungled execution of a search warrant on that date, and they had not contacted Gus' Power of Attorney.

WHEREFORE, Plaintiff prays for a Judgment against ISP, BATF, and the City of Morrison Police Department and in favor of the Plaintiff, awarding reasonable compensatory and punitive damages, costs, attorneys' fees, and for any other relieve deemed just and fair under the circumstances.

### COUNT IV – Unlawful Restraint
### Illinois State Law
### Against Defendants ISP, BATF, and City of Morrison Police Department

68. Plaintiff incorporates all paragraphs of this Complaint as fully set forth herein.

69. Defendants ISP, BATF, and/or the City of Morrison Police Department committed the tort of unlawful restraint against the person of Gus Linke on Octobre 21, 2022 when they

70. physically removed him from his home and his property, undressed him and put him in jail attire, and placed in in a police patrol care when he was not capable of giving consent to this removal, the above-named Defendants knew Gus was not mentally capable of giving consent, Gus was not a suspect in a crime, Gus was not under arrest, two of his three 24-hour caregivers had just been shot in this bungled execution of a search warrant on that date, and they had not contacted Gus' Power of Attorney.

WHEREFORE, Plaintiff prays for a Judgment against ISP, BATF, and the City of Morrison Police Department and in favor of the Plaintiff, awarding reasonable compensatory and punitive damages, costs, attorneys' fees, and for any other relieve deemed just and fair under the circumstances.

**COUNT V – Negligence and Gross Negligence**
**Illinois State Claim**
**Against Defendants ISP and BATF**

71. Plaintiff incorporates all paragraphs of this Complaint as fully set forth herein.

72. ISP and BATF committed the torts of negligence and gross negligence in their operation in September and October of 2022 to obtain a set up two drug purchases with an informant in order to obtain a search warrant, in their supervision and training of Defendants Baits and Wyckstandt, and in their complete failure to make cohesive plan to execute this search warrant on October 21, 2022 at the home of Gus Linke on Cherry Street in Morrison, Illinois.

73. The acts of negligence and gross negligence by Defendants ISP and BATF, descried in Paragraph 72 above, caused great suffering to Gus, as these acts were reckless and wanton with indifference to the safety of the home owner of 604 Cherry Street in Morrison, Illinois, and there were much safer options available to the above-named Defendants if they wanted to arrest Aaron Linke or to search the portion of Gus'

residence where Aaron stayed and lived, pursuant to court order and acting as Gus' caregiver.

WHEREFORE, Plaintiff prays for a Judgment against ISP and BATF and in favor of the Plaintiff, awarding reasonable compensatory and punitive damages, costs, attorneys' fees, and for any other relieve deemed just and fair under the circumstances.

### COUNT VI – Indemnification
### Illinois State Law
### Against Defendants ISP and BATF

74. Plaintiff incorporates all paragraphs of this Complaint as fully set forth herein.

75. In Illinois, public entities are required to pay any tort judgment for compensatory damages for which employees are liable, so long as the employee acted within the scope of their employment.

76. At all relative times, Defendant Baits, who fatally shot Gus' son, Aaron Linke, in Gus' home on October 21, 2022, was employed by the Illinois State Police.

77. Defendant Baits committed the acts alleged above under color of law and within the scope of his employment with Defendant ISP.

78. At all relative times, Defendant Wyckstandt was employed by the Sterling Police Department, but was assigned to and was under the supervision of BATF.

79. Defendant Wyckstandt committed the acts alleged above under color of law and within the scope of his employment as a law enforcement officer, assigned to and supervised BATF.

WHEREFORE, should Defendant Baits and/or Defendant Wyckstandt be found liable for one or more of the claims contained in this complaint, the Plaintiff requests Defendants

Illinois State Police and BATF be found liable for any compensatory damages awarded against Defendant Baits and/or Defendant Wyckstandt, as well as costs, attorneys' fees, and any other relief deemed just and fair under the circumstances.

## COUNT VI – *Respondent Superior*
## Illinois State Law
## Against Defendants ISP and BATF

80. Plaintiff incorporates all paragraphs of this Complaint as though fully set forth herein.

81. At all relevant times, Defendant Baits was an employee of Defendant Illinois State Police (ISP), was acting within the scope of his employment, and was acting under color of law.

82. At all relevant times, Defendant Wyckstandt was employed by the Sterling Police Department, but was acting under the direct supervision of Defendants ISP and BATF and acting under color of law.

83. Under Illinois law, Defendant ISP and Defendant BATF are liable for any misconduct committed by an employee that was committed within the scope of his employment.

WHEREFORE, should Defendant Baits be found liable for one or more of the claims contained in this complaint, the Plaintiff requests Defendant Illinois State Police and the Blackhawk Area Task Force be found liable for any compensatory damages awarded against Defendant Baits and/or Wyckstandt, as well as costs, attorneys' fees, and any other relief deemed just and fair under the circumstances.

## JURY DEMAND

Plaintiff, Megan Linke, as Executor of the Estate of Clarence A. "Gus" Linke, III, demands a trial by jury.

/s/ *Susan K. O'Neal*
Susan K. O'Neal
Illinois ARDC# 6204492

Susan O'Neal
Attorney for Plaintiff
P.O. Box 9483
Peoria, IL 61612
Phone: (309) 412-9500
E-mail: susan@attorneysusanoneal.com