**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**WESTERN DIVISION**

| | | |
|---|---|---|
| **MEGAN LINKE, as Executor for the Estate of Clarence A. "Gus" Linke III,** | ) ) ) | |
| **Plaintiff,** | ) ) | |
| **v.** | ) ) | **No. 3:23 C 50370** |
| **ILLINOIS STATE TROOPER STUART BAITS; STERLING POLICE OFFICER KYLE WYCKSTANDT; CITY OF MORRISON; UNKNOWN CITY OF MORRISON POLICE OFFICERS; UNKNOWN MEMBERS OF THE BLACKHAWK AREA TASK FORCE; and BLACKHAWK AREA TASK FORCE,** | ) ) ) ) ) ) ) ) ) ) | **Judge Rebecca R. Pallmeyer** |
| **Defendants.** | ) | |

**MEMORANDUM OPINION AND ORDER**

On October 22, 2022, Defendant officers executed a search warrant at the home of Clarence A. "Gus" Linke, III ("Mr. Linke") in Morrison, Illinois. The search resulted in the shooting of Mr. Linke's son, who lived with Mr. Linke, and of Mr. Linke's caregiver. The son died of his injuries, and Mr. Linke himself died the following year. His daughter, Plaintiff Megan Linke ("Plaintiff") brings this action on behalf of the estate of her father, alleging violations of 42 U.S.C. § 1983 and Illinois tort law. Defendants Stuart Baits and Kyle Wyckstandt, both police officers, have moved to dismiss for lack of subject matter jurisdiction and failure to state a claim pursuant to FED. R. CIV. P. 12(b)(1) and 12(b)(6).

For the reasons discussed below, the court grants the motion to dismiss the state law claims against both defendants; grants the motion to dismiss the federal law claims against Wyckstandt; but denies the motion to dismiss the federal law claims against Baits.


**BACKGROUND**

I.     **Factual Background**

The facts laid out below are taken from Plaintiff's Amended Complaint, which are accepted as true at the pleading stage.[1]  *See Bible v. United Student Aid Funds, Inc.*, 799 F.3d 633, 639 (7th Cir. 2015).  In early 2021, Mr. Linke's son—Aaron Linke—was held in Whiteside County Jail, awaiting trial on (unidentified) felony criminal charges.  (Am. Compl. [37] ¶ 17.)  On February 25, 2021, Aaron was released on a $150,000 bond to help provide care for Mr. Linke, who suffered from Parkinson's disease and dementia.  (*Id.* ¶ 18–19.)  Mr. Linke required around-the-clock care, and a non-family caregiver lived at his residence.  (*Id.* ¶ 27.)  Under the state court's order, Aaron was to live with Mr. Linke and the caregiver, and was required to wear an electronic monitoring device.  (*Id.* ¶ 19, 26.)

A year later, in 2022, the Blackhawk Area Task Force ("BATF") arranged for a sting purchase of drugs from Aaron.[2]  The purchases were made by Jill Jones, a police informant, who had approached officers with information about Aaron after she learned that she was also facing drug charges.  (*Id.* ¶ 20.)  In cooperation with the BATF, Jones made at least two purchases of drugs from Aaron, one on September 29, 2022, and the other on October 19, 2022.  (*Id.* ¶ 21.)  The BATF recorded these transactions on a video recording device worn by Jones.  (*Id.* ¶ 22.)  At least one transaction was monitored by police officers located in a nearby vehicle.  (*Id.*)

Soon after, a state court judge in Whiteside County, Illinois, issued a search warrant for the Linke residence.  The Amended Complaint includes no details concerning the warrant, but an earlier version of the Complaint states that the warrant was to search the home for "guns and illegal drugs."  (Compl. [1] ¶ 15.)  The search warrant was based on an affidavit sworn by Wyckstandt, who described the video-recorded drug transactions involving Aaron.  (Am. Compl.

---

[1]     Megan Linke is Gus's daughter, and the executor of his estate.  (Am. Compl. [37] ¶ 17.)

[2]     The BATF is a "multi-jurisdiction drug task force comprised of officers drawn from various Illinois municipal police departments and overseen by the Illinois State Police."  (*Id.* ¶ 16.)

[37] ¶ 23.)  The state police did not make Jones available to the state judge for questioning, and Wyckstandt's affidavit does not attest that he was familiar with Jones or had found her to be reputable.  (*Id.* ¶ 23.)

The search warrant was executed in the early morning of October 21, 2022.  (*Id.* ¶ 28.) More than a dozen police officers, described by the Amended Complaint as "military clad," arrived at the Linke residence.  (*Id.*)  The police officers had trouble locating the door, and they initially attempted to enter through the back of the residence.  (*Id.* ¶ 29.)  There was no door in the back, but the officers found the front door, knocked, and identified themselves.  Less than ten seconds later, they forced their way into the interior entryway.  (*Id.* ¶ 30.)  They detonated a flashbang grenade—a non-lethal device designed to stun and disorient a target—inside the residence.  (*Id.* ¶ 31.)  Then, allegedly having "no plan for what was to occur after they violently forced their way" into the building, the officers stood in the entryway for about two minutes.  (*Id.* ¶ 32–33.)

The officers began ascending the stairs while instructing any occupants to come out with their hands up.  (*Id.* ¶ 34–35.)  Visibility was poor; the flashbang grenades created smoke, and the second floor was poorly lit, making it difficult for the officers to see.  (*Id.* ¶ 33, 37–38.)  When the officers reached the top of the stairs, they detonated a second flashbang grenade.  (*Id.* ¶ 37.) Baits fired his weapon, hitting Aaron Linke and Rachel Tucker, Mr. Linke's live-in caretaker.  Aaron died from his wounds soon thereafter.[3]  (*Id.* ¶ 42–43.)

Gus Linke himself, who was not suspected of criminal activity and had no capacity to give consent, was nevertheless "escorted" from his home at gunpoint.  (*Id.* ¶ 46.)  Later that morning, Virginia Carmen, another of his caretakers, found him wrapped in a blanket, inside a police vehicle parked at the hospital.  Plaintiff alleges that Mr Linke was "wearing jail attire" and was "covered in his own urine and feces" when Ms. Carmen found him.  (*Id.* ¶¶ 48-49.)  How he got there is not clear, but Plaintiff alleges that Mr. Linke and Ms. Carmen herself were taken to the police station

---

[3]      The Amended Complaint does not discuss the severity of Tucker's injuries.

for questioning, and Carmen was not permitted to clean Mr. Linke or retrieve his medicine.  (*Id.* ¶ 49.)

After this incident, Mr. Linke never returned to his own home.  (*Id.* ¶ 50.)  His condition deteriorated rapidly, and he soon "lost the use of his hands or ability to help get him to a standing position."  (*Id.*)  He died on April 6, 2023.  (*Id.* ¶ 54.)

## II.    Procedural Background

Gus's daughter, Megan Linke, filed this lawsuit on October 20, 2023, in her capacity as executor of his estate [1].  Plaintiff alleges four violations of § 1983, including excessive force (Count I), unlawful detention (Count II), failure to provide medical attention (Count III), and failure to intervene (Count IV).  She also alleges four claims under state tort law, including battery (Count IV), intentional infliction of emotional distress (Count V), unlawful restraint (Count VII), and negligence (Count VIII).  (Am. Compl. [37] at 8–15.)

In addition to Wyckstandt and Baits, Plaintiff's original complaint named the Illinois Police Department ("IPD"), the City of Morrison Police Department ("MPD"), and the BATF as defendants.  (*See* Compl. [1.])  ISP and MPD moved to dismiss, pointing out that police departments are not legal entities under Illinois law, and thus cannot be sued.  (*See*. Mem. [31-1.])  Plaintiff then filed an amended complaint, removing the police departments and adding the City of Morrison as a defendant.  (*See* Am. Compl. [37.])  A few months after, Plaintiff agreed to dismiss all counts against Morrison without prejudice.[4]  [40.]

Wyckstandt and Baits filed this motion to dismiss on November 1, 2024, pointing to FED. R. CIV. P. 12(b)(1) and 12(b)(6).[5]  [45.]  Plaintiff filed a memorandum in opposition on December

---

[4]    These procedural twists and turns were due, in part, to a change in Linke's representation; soon after filing the complaint, her first attorney moved to withdraw, citing semi-retirement and part time employment as a public defender [5].  Linke retained other attorneys who appeared in May 2024 and filed the amended complaint some months later [37].

[5]    This case was originally assigned to Judge Reinhard.  Pursuant to IOP 13(d), the court's Executive Committee reassigned this case to Judge Pallmeyer on August 6, 2024 [33].

16, 2024 [57-1], and Defendants replied in separate filings on January 23, 2025 (Baits Opp. [73])

and January 24, 2025 (Wyckstandt Opp. [74]).  This matter is now fully briefed and ready for

decision.

## LEGAL STANDARD

A motion to dismiss under Rule 12(b)(1) challenges the court's subject matter jurisdiction.

"[S]ubject matter jurisdiction is a fundamental limitation on the power of a federal court to act."

*Del Vecchio v. Conseco, Inc*., 230 F.3d 974, 980 (7th Cir. 2000).  If a federal court "determines at

any time that it lacks subject-matter jurisdiction, the court must dismiss the action."  FED. R. CIV. P.

12(h)(3).  The plaintiff bears the burden of demonstrating jurisdiction by a preponderance of the

evidence.  *Lee v. City of Chi.*, 330 F.3d 456, 468 (7th Cir. 2003).

Similarly, a motion to dismiss under Rule 12(b)(6) challenges the sufficiency of the

complaint, not its merits.  FED R. CIV. P. 12(b)(6); *Hallinan v. Fraternal Ord. of Police of Chi. Lodge

No. 7*, 570 F.3d 811, 820 (7th Cir. 2009).  To survive, a complaint must "state a claim to relief that

is plausible on its face."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  A claim is

considered plausible if "the plaintiff pleads factual content that allows the court to draw the

reasonable inference that the defendant is liable for the misconduct alleged."  *Ashcroft v. Iqbal*,

556 U.S. 662, 678 (2009).  "[D]etailed factual allegations" are not required, but "labels and

conclusions, and a formulaic recitation of the elements of a cause of action will not do."  *Twombly*,

550 U.S. at 555.

Defendants argue that they have immunity from Plaintiff's state law tort claims, which, if

true, means that the court has no jurisdiction to hear those claims.  They argue, further, that

Plaintiff has not alleged valid claims against them under 42 U.S.C. § 1983.  In considering motions

under Rule 12(b)(1) and 12(b)(6), the court will accept all well-pleaded facts as true and draw

reasonable inferences in the non-movant's favor.  *See Brant v. Schneider Nat'l, Inc.*, 43 F.4th

656, 664 (7th Cir. 2022).

## DISCUSSION

### I. State Law Claims

The court turns, first, to the argument for immunity from the state tort law claims. Defendants invoke two immunity doctrines: sovereign immunity and public officer immunity. (Mem. at 6–8.) Because the court agrees that sovereign immunity protects Defendants, it need not address the parties' arguments related to public officer immunity.

Illinois law requires that all lawsuits brought against the state government be filed in a designated state forum.[6] The Illinois Lawsuit Immunity Act provides that "[e]xcept as provided in . . . the Court of Claims Act, . . . the State of Illinois shall not be made a defendant or party in any court." 745 ILCS 5/1. Under state law, sovereign immunity also extends to individual state actors whenever the action "is in fact one against the State." *Healy v. Vaupel*, 133 Ill.2d 295, 308, 549 N.E.2d 1240, 1247 (1990). In other words, the "prohibition 'against making the State of Illinois a party to a suit cannot be evaded by making an action nominally one against the servants or agents of the State when the real claim is against the State of Illinois itself and when the State of Illinois is the party vitally interested.'" *T.S. v. Cnty. of Cook*, 67 F.4th 884, 891 (7th Cir. 2023) (quoting *Sass v. Kramer*, 72 Ill. 2d 485, 491, 381 N.E.2d 975, 977 (1978). Defendants argue that this theory applies to them. (See Mem. at 6–8.)

The court notes, initially, that now is the appropriate time to address sovereign immunity— a jurisdictional issue as a matter of Illinois law, under which only the Illinois Court of Claims has jurisdiction to hear tort cases brought against the state or its employees. *See People ex rel Manning v. Nickerson*, 184 Ill. 2d 245, 248, 702 N.E.2d 1278, 1280 (1998). And, although sovereign immunity is not a jurisdictional issue as a matter of federal law, the Seventh Circuit has

---

[6] Because "state rules of immunity govern actions in federal court alleging violations of state law," *Benning v. Bd. of Regents of Regency Univs.*, 928 F.2d 775, 777 (7th Cir. 1991), the court draws on Illinois case law in analyzing the parties' sovereign immunity arguments.

recognized that it is still proper to consider the issue at the pleading stage. *See Meyers v. Oneida Tribe of Indians of Wisconsin*, 836 F.3d 818, 822 (7th Cir. 2016).

The Illinois Supreme Court and Seventh Circuit both apply a three-part test to determine whether sovereign immunity protects an individual state actor. *See, e.g.*, *Healy*, 133 Ill. 2d at 309, 549 N.E.2d at 1247; *T.S.*, 67 F.4th at 892. Under the *Healy* test, a claim is treated as a claim against the state if:

> "[T]here are (1) no allegations that an agent or employee of the State acted beyond the scope of his authority through wrongful acts; (2) the duty alleged to have been breached was not owed to the public generally independent of the fact of State employment; and (3) where the complained-of actions involve matters ordinarily within that employee's normal and official functions of the State."

*Healy*, 133 Ill.2d at 309, 549 N.E.2d at 1247 (quoting *Robb v. Sutton*, 147 Ill. App.3d 710, 716 498 N.E.2d 267, 727 (4th Dist. 1986)). The court must determine if the claim "nominally" against Defendants is in fact a suit against the State of Illinois by applying the above *Healy* factors. Defendants are granted immunity only if they satisfy all three factors. *Hampton v. City of Chi.*, 349 F. Supp. 2d 1075, 1078 (N.D. Ill. 2004).

Plaintiff does not dispute that the *Healy* framework applies here, but she opens her argument by claiming that "[s]overeign immunity affords no protection to a State employee or agent when a plaintiff alleges that they violated statutory or constitutional law." (Opp. [57-1] at 5.) In support of this, she cites to *Murphy v. Smith*, 844 F.3d 653 (7th Cir. 2016), and a smattering of District Court cases. (*Id.* at 5–6.) *Murphy* is not applicable here—it involves what is known as the "officer suit exception," which the Seventh Circuit recently held applies only to suits seeking injunctive relief against state officers. *T.S.*, 67 F.4th at 894. In a case seeking damages, like the one here, the proper course of action is to analyze the three *Healy* factors. *See id.*

## A. Scope of Authority

The first *Healy* factor is whether "an agent or employee of the State acted beyond the scope of his authority through wrongful acts." *Healy*, 133 Ill.2d at 309, 549 N.E.2d at 1247. Because "sovereign immunity presupposes the possibility of a legal wrong by a state employee,"

an employee does not exceed the scope of their authority simply by committing a tort.  *Shirley v. Harmon*, 405 Ill. App.3d 86, 96, 933 N.E.2d 1225, 1234 (2d Dist. 2010).  Instead, "the question is whether the employee intended to perform some function within the scope of his or her authority when committing the legal wrong."  *Jackson v. Alvarez*, 358 Ill. App.3d 555, 561, 831 N.E.2d 1159, 1164 (4th Dist. 2005).

That is the case here.  At all relevant points in this matter, Wyckstandt and Baits were state officers on duty, performing law enforcement functions.  Plaintiff has not alleged that either was attempting any function outside the scope of their authority at any time.  Indeed, the Amended Complaint confirms the contrary, specifically asserting that Defendants were acting within the scope of their official authority (under color of state law) during the raid.  (*See* Am. Compl. ¶ 58 ("At all times during the breach and search of the residence and the events following regarding the mistreatment of Gus Linke, all Defendants were acting under the color of law and were engaging in state action."))

A recent case from Illinois state court, *Green v. State of Illinois*, 2023 IL App (1st) 220245, 229 N.E.3d 387, is instructive.  There, the plaintiff's vehicle was pulled over by state troopers who allegedly seized a firearm from the vehicle and used it to shoot a passenger in the back of the head.  *Id.* at ¶ 3, 229 N.E.3d at 391.  The court affirmed a determination that the officers were shielded from liability for this wrongdoing by sovereign immunity.  According to the opinion, while the plaintiff repeatedly alleged that the officers' actions were "willful and wanton and without lawful justification," the complaint did not include "any specific facts supporting an inference that the troopers were doing something other than attempting to perform some function within the scope of their authority when the injury occurred."  *Id.* at ¶ 28, 229 N.E.3d at 395.  That negligence or misconduct was alleged to occur during a traffic stop did not change the fact that the alleged torts occurred during police activity.

8

The same is true here. Each of the torts alleged occurred while the officers were executing a search warrant (or in the immediate aftermath), with no allegation otherwise. They thus did not exceed the scope of their authority. *See Jackson*, 358 Ill. App.3d at 560, 831 N.E.2d at 1164.

### B. Source of Duty

The court next considers whether the "duty alleged to have been breached was not owed to the public generally independent of the fact of State employment." *T.S.*, 67 F.4th at 892 (quoting *Healy*, 133 Ill.2d at 308, 549 N.E.2d at 1247). "'[T]he proper inquiry is to analyze the source of the duty the employee is charged with breaching.'" *Id.* (quoting *Currie v. Lao*, 148 Ill. 2d 151, 159, 592 N.E.2d at 980 (1992). If the duty exists independently of State employment, the claim is not barred by sovereign immunity. *See Jinkins v. Lee*, 209 Ill. 2d 320, 330–31, 807 N.E.2d 411, 418–19 (2004). "The question to ask, in other words, is whether the defendant breached a duty owed by all citizens, or whether he breached a duty held uniquely by State employees holding the job at issue." *Turpin v. Koropchak*, 567 F.3d 880, 883 (7th Cir. 2009).

The source of the duty often depends on the activities of the state employee at the time the tortious actions took place. An employee who harms someone else while engaging in normal, everyday activities does not enjoy sovereign immunity, as the State is not the true party at interest in the case. For example, in *T.S.*, the Seventh Circuit noted that a state trooper who harms another driver while routinely operating their police cruiser is not shielded by sovereign immunity, as the duty that was violated was the duty owed by a driver to all other drivers on the road. *See T.S.*, 67 F.4th at 892–93 (citing *Currie*, 148 Ill. 2d at 162–63, 592 N.E.2d at 982). But if that same state trooper harms someone else while engaging in a high-speed chase of a suspect, they do enjoy sovereign immunity, as the claim "revolve[s] around the operation of a State Police vehicle in a manner uniquely related to his state employment." *Campbell v. White*, 207 Ill. App.3d 541, 552, 566 N.E.2d 47, 54 (4th Dist. 1991).

Defendants Baits and Wyckstandt are correct that the duties at issue arise from their employment as police officers. The claims here arose during, or shortly after, the execution of a

9

search warrant at a private residence.  This is law enforcement activity, and the officers' actions are "uniquely related to [Defendants'] governmental employment."  *Currie*, 148 Ill. 2d at 164, 592 N.E.2d at 983.  This suggests that the State is the "real party in interest" in this case.  *See Turpin*, 567 F.3d at 881–85.

In response, Plaintiff points to the fact that battery, unlawful restraint, and the other state torts bind the public at large, not just police officers.  She argues that "[t]hese duties were imposed by Illinois statutes or Illinois law and are not the product of Defendants' positions as law enforcement officers."  (Opp. [57-1] at 7.)  This misunderstands *Healy*.  It is true that these torts can be committed by the public at large, not just police officers.  But the *specific duties* that are alleged to have been breached in this case are unique to law enforcement.  Defendants were not houseguests in the Linke home—they were police officers executing a warrant, and the fact that Defendants were police officers is critically important to the merits of the case.  *See Turpin*, 567 F.3d at 883 ("The fact that we can find a broader parallel duty held by all citizens . . . doesn't change a thing."); *see also Martinez v. Ill. Dep't of Human Servs.*, No. 22 C 6755, 2023 WL 5509356 at *3 (N.D. Ill. Aug. 25, 2023) ("In short, although the duty at issue here is one that is owed to the public, its source in this particular case came from [] state employment.").  The "source of duty" is thus the officers' employment with the State of Illinois.

### C. Employee's Official Functions

The final *Healy* prong asks whether the employee's actions "involved matters 'ordinarily within . . . the normal and official functions'" of a state trooper.  *T.S.*, 67 F.4th at 893 (quoting *Healy*, 133 Ill. 2d at 309, 549 N.E.2d at 1247).  Defendants' motives defendants do not factor into this inquiry.  Instead, the question is whether or not the allegedly tortious activity was within the scope of the employee's job.  This "criterion overlaps to some extent with the first."  *Id.* (citation and internal quotation marks omitted).

In this case, the conduct that Defendants allegedly engaged in relates directly to their official duties.   As explained above, the conduct at issue here arises out of the execution of a

search warrant, and events immediately subsequent to the execution of a search warrant. These activities are clearly within the scope of Defendants' job duties as law enforcement officers. Plaintiff challenges this assertion, arguing that Defendants are engaging in a "bait and switch attempt to move the bullseye from battery, unlawful restraint and willful and wanton conduct to the mundane execution of a search warrant." (Opp. [57-1] at 8.) This misses the mark. The fact that a police officer commits a tort while on the job does not transform an official function into something else. Sovereign immunity presupposes a harm—the purpose of the Lawsuit Immunity Act is to funnel state claims against state employees into a designated state forum. Defendants' theory would nullify this process, as state law immunity from tort claims would be forfeited whenever a state employee commits a tort. The court does not understand Illinois law to contain an exception that swallows the rule.

<p style="text-align:center">*   *   *   *   *</p>

Because they satisfy each of the three *Healy* factors, Defendants are immune from the state law claims. Pursuant to Illinois law, the proper venue for these claims is the Illinois Court of Claims. Defendants' motion to dismiss the state tort claims is granted without prejudice to proceeding in that Court.

## II.    Federal Law Claims

Plaintiff also brings federal civil rights claims under 42 U.S.C. § 1983. In order to prevail on this claim, Plaintiff must show that Mr. Linke "(1) held a constitutionally protected right; (2) was deprived of that right in violation of the Constitution; (3) defendant intentionally caused this deprivation; and (4) defendant acted under color of law." *Curtis v. Wilks*, 704 F. Supp. 2d 771, 781–82 (N.D. Ill. 2010) (citation and internal quotation marks omitted).

Defendants challenge Plaintiff's federal claims, as well. They argue that Plaintiff's Amended Complaint fails to state a claim under § 1983 because it does not allege personal involvement on the part of either Wyckstandt or Baits. (Mem. [44] at 3.) This argument is addressed, as to each Defendant, below.

<p style="text-align:center">11</p>

### A. Wyckstandt

First, as to Officer Wyckstandt, the Amended Complaint does not allege that he was present at the search, nor does it allege that he was involved in the subsequent mistreatment of Mr. Linke. The only allegation against Wyckstandt is that he violated the law by procuring the search warrant—specifically, by failing to provide information about a police informant (Jones) to the reviewing judge. The Amended Complaint states the following (and only the following):

> Wyckstandt did not bring Jones to Court for the judge to question before the warrant was issued. Nor did Wyckstandt assert in his supporting affidavit that Jones was someone he had worked with previously and found to be a credible source of information.

(Am. Compl. [37] ¶ 23.)

To be sure, a defective search warrant application can violate Section 1983. A warrant application is unlawful "if an officer, in making the request, knowingly, intentionally, or with reckless disregard for the truth, makes false statements that were material—that is, necessary to the determination that a warrant should issue—or intentionally and recklessly withholds material facts." *Socha v. City of Joliet,* 107 F.4th 700, 708 (7th Cir. 2024) (citations and internal quotation marks omitted). If an officer withholds information that "affects the probable cause determination," the warrant is unlawful, even if it was ultimately approved by a neutral magistrate. *See United States v. Clark*, 935 F.3d 558, 564 (7th Cir. 2019).

Plaintiff evidently believes that withholding information about Jones violated Mr. Linke's constitutional rights. The court disagrees. Most important, the search was independently supported by probable cause. As Plaintiff acknowledges, the affidavit in support of the request for a warrant was based on two drug transactions extensively documented by law enforcement— both were recorded on video, and one was personally observed by law enforcement officers. This evidence is enough for probable cause, even without any information from Jones. Because the video evidence independently supports the warrant, the fact that Wyckstandt presented no independent reason to trust Jones is not material to the probable cause determination. (*See* Am.

12

Compl. [37] ¶ 23.) True, the reliability of a government informant can be relevant to probable cause. *See Edwards v. Jolliff-Blake*, 907 F.3d 1052, 1056–57 (7th Cir. 2018) (laying out a five-part test). But here, the degree of corroboration and extent of firsthand observation provide sufficient reliability for the state judge's probable cause determination.[7] Plaintiff does not allege any facts that would call the validity of the warrant into doubt, and cites no authorities in support of her apparent belief that an officer's failure to disclose his lack of experience with an informant establishes a Constitutional violation. Plaintiff's claim that Wyckstandt violated Section 1983 with respect to the search warrant is not plausible. *See* FED. R. CIV. P. 8; *Iqbal*, 556 U.S. at 678.

In her briefing, Plaintiff advances another theory of liability: that because Wyckstandt secured the search warrant, he is also liable for the constitutional violations that occurred during the search. (Opp. [57-1] at 3–5.) She writes that the affidavit "lacked sufficient indicia of reliability and resulted in the issuance of a warrant that also lacked sufficient particularity," making Wyckstandt liable for the downstream violations that "followed directly" from the search. (*Id.* at 4.)

The problem with this argument is that Plaintiff has not made any allegations that lend support to her causation theory. As she sees things, Wyckstandt caused the constitutional violations by procuring the search warrant. That might be true in a technical sense, as the search warrant is a but-for cause of the search. But allegations of actual causation alone are not enough—Section 1983 plaintiffs must show that an officer's actions were both the actual *and proximate* cause of their mistreatment. *Hunter v. Mueske*, 73 F.4th 561, 568 (7th Cir. 2023). Plaintiff alleges nothing other than the fact that Wyckstandt procured the warrant that led to the search, and does not suggest that he could have known or suspected that the execution of the warrant would violate the Constitution.

---

[7] The federal courts afford "great deference" to the state judge's determination of probable cause. *See, e.g.*, *Johnson v. Myers*, 53 F.4th 1063, 1069 (7th Cir. 2022).

Plaintiff cites two cases in support of her theory, but neither are applicable. She first cites to *Brokaw v. Mercer Cnty.*, 235 F.3d 1000, 1012 (7th Cir. 2000), for the assertion that "[a]n official causes a constitutional violation if he sets in motion a series of events that defendant knew or reasonably should have known would cause others to deprive plaintiff of constitutional rights." *Id.* Unlike the plaintiff in *Brokaw*, however, Plaintiff does not allege that Wyckstandt "knew or reasonably should have known" that Mr. Linke's constitutional rights would be violated during the search. Plaintiff also cites, without further argument, to *Hostetler v. City of Southport*, No. 1:17-cv-01564-TWP-TAB, 2018 WL 1505015, at *3 (S.D. Ind. Mar. 27, 2018). That case is also inapplicable because in that case, the plaintiff, unlike Linke, alleged that the official at issue "was physically present during the search of his home," and that his subsequent arrest was "directed" by that same official. *Id.* Neither allegation is made in this case.

Because Plaintiff has not stated a claim against Wyckstandt, dismissal is appropriate. For now, the claim is dismissed without prejudice; "[d]ismissal without prejudice is the norm, at least when it comes to the plaintiff's original complaint." *White v. Ill. State Police*, 15 F.4th 801, 808 (7th Cir. 2021). Plaintiff's original complaint was drafted by counsel who has since withdrawn from the case. While current counsel has already amended the complaint one time, the court believes that flexibility is appropriate given that Plaintiff's first lawyer withdrew due to the circumstances outside of her control.

All counts against Wyckstandt are dismissed without prejudice.

**B.    Baits**

As to Baits, Defendants raise the same argument: the complaint fails to allege that he was "personally involved in the alleged constitutional violations." (Opp. [45] at 3.) "Section 1983 creates a cause of action based upon personal liability and predicated upon fault. An individual cannot be held liable in a § 1983 action unless he caused or participated in an alleged constitutional deprivation." *Wolf-Lillie v. Sonquist*, 699 F.3d 864, 869 (7th Cir. 1983). Because liability under § 1983 requires that the defendant "personally participated in" or caused the

14

unconstitutional actions, *Duncan v. Duckworth*, 644 F.2d 653, 655 (7th Cir. 1981), complaints must typically allege personal involvement on the part of each defendant. *See Bank of Am., N.A. v. Knight*, 725 F.3d 815, 818 (7th Cir. 2013).

Defendants argue that Plaintiff fails on this ground. They believe that because Plaintiff directs most of her claims towards "Defendants," collectively, then "Plaintiff does not make any specific factual allegations showing that Defendant Baits was personally involved in the alleged constitutional deprivations or tortious actions." (Baits Reply [73] at 2 (quoting Am. Compl. [37] at 8–14).)

The court disagrees; Plaintiff's use of group pleading does not doom her complaint. "Group pleading, while not ideal, is not categorically impermissible." *Fulton v. Bartik*, 547 F. Supp. 3d 799, 810 (N.D. Ill. 2021). "There is no 'group pleading' doctrine, *per se*, that either permits or forbids allegations against defendants collectively." *Robles v. City of Chi.*, 354 F. Supp. 3d 873, 875 (N.D. Ill. 2019). In many cases brought under § 1983, a plaintiff is "forced to employ limited group pleading" because they cannot "specify which individual committed which parts of the alleged misconduct before the benefit of discovery." *Jordan v. City of Chi.*, No. 20-cv-4012, 2021 WL 1962385, at *2 (N.D. Ill. May 17, 2021); *see also Rodriguez v. Plymouth Ambulance Serv.*, 577 F.3d 816, 821 (7th Cir. 2009) (noting that where "the plaintiff has been injured as the consequence of the actions of an unknown member of a collective body, identification of the responsible party may be impossible without pretrial discovery").

In such cases, the plaintiff's pleadings must "give [] defendant[s] fair notice of what the . . . claim is and the grounds upon which it rests." *Swanson v. Citibank, N.A.*, 614 F.3d 400, 404 (7th Cir. 2010) (quoting *Erickson v. Pardus*, 551 U.S. 89, 93 (2007)). A claim meets this standard whenever it "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Rodriguez*, 577 F.3d at 821; *see also Bank of Am., N.A.*, 725 F.3d at 818 ("Each defendant is entitled to know what he or she did that is asserted to be wrongful.").

15

Plaintiff has provided enough factual material to put Baits on notice of the allegations against him. The complaint includes detailed allegations about the actions that Plaintiff believes violated Section 1983—some of them are directed towards Baits; other are directed towards "Defendants" collectively, a group that includes Baits. The complaint alleges that Baits was present at the scene as part of a group of officers conducting the raid, and that some of those officers violated Mr. Linke's constitutional rights during the raid. Given this context, it is fair to infer that Baits either directly caused the misconduct, or witnessed it and failed to intervene. This is enough to survive a motion to dismiss. *Sloan v. Anker Innovations, Ltd.*, 711 F. Supp. 3d 946, 955–56 (N.D. Ill. 2024) ("A complaint that directs every allegation at all the defendants can provide sufficient detail to put the defendants on notice because the defendants do not have to speculate about which claims or allegations pertain to them; they must defend against them all.") (citation and internal quotations omitted).

Baits raises one further challenge to the sufficiency of the allegations against him: he argues that because the complaint alleges that "Unknown Members of the BATF" violated Mr. Linke's rights, those allegations do not reach Baits, who apparently is not a member of that task force.[8] Discovery will of course flesh out the role Baits played, but the court does not believe Plaintiff's use of the "BATF" label requires dismissal of Baits. As the court reads Plaintiff's allegations, she used the phrase "BATF" to refer, collectively, to the police officers taking part in the raid—a fair assumption, given that the BATF investigated Aaron Linke and obtained the search warrant. A plaintiff cannot be expected to correctly plead the exact departmental affiliation of an officer whose identity and role are entirely within Defendants' control. Drawing all inferences in favor of the plaintiff, the court will read these allegations as referring to the raiding officers collectively, not just to those who are official members of the BATF.

The motion to dismiss the § 1983 counts against Baits is denied.

---

[8]     According to Defendants, Baits is a member of the Illinois State Police.

## **CONCLUSION**

Defendants' motion [44] is granted in part and denied in part. State law claims against both Defendants are dismissed with prejudice. The constitutional tort claims against Defendant Wyckstandt are dismissed without prejudice. The motion to dismiss the constitutional torts counts against Defendant Baits is denied.

ENTER:

Dated: September 19, 2025

_____

REBECCA R. PALLMEYER
United States District Judge

17