**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**

| | | |
|---|---|---|
| **MEGAN LINKE, as Executor for the Estate of Clarence A. "Gus" Linke III,** | ) | |
| **Plaintiff,** | ) | **No. 23-cv-50370** |
| **v.** | ) | **Judge Rebecca R. Pallmeyer** |
| **BLACKHAWK AREA TASK FORCE, KYLE WYCKSTANDT,** | ) | |
| **Defendants.** | ) | |

**MEMORANDUM OPINION AND ORDER**

On October 21, 2022, Defendant Blackhawk Area Task Force ("BATF") and Illinois State Police SWAT ("SWAT") executed a search warrant at the home of Clarence A. "Gus" Linke III, a 76-year-old man suffering from Parkinson's disease and dementia. The target of the search was Gus's son Aaron Linke, who was living with Gus and was suspected of drug trafficking; Gus himself was not a suspect in any crime. During the search, officers shot and killed Aaron and one of Gus's caretakers who was on the scene at the time. Defendant Kyle Wyckstandt and another unspecified officer are alleged to have moved Gus to "a squad car to be transported to the Whiteside County Sheriff's Office." (Second Amended Complaint "SAC" [86] ¶ 30.) Several hours later, however, another of Gus's caretakers, Virginia Carmen, found Gus in the back seat of a squad car parked behind Morrison Community Hospital, wearing jail attire and covered in his own waste.

Virginia Carmen brought Gus to the Whiteside County Sheriff's Office, where he was questioned. Gus's condition deteriorated within a week after the BATF operation, and he never returned home. His daughter, Megan Linke, as executor of his estate, brings this lawsuit against officers who were involved in the search. In a previous ruling, the court declined to dismiss her claims against Stuart Baits and the Illinois State Police officer who was present during the search. Plaintiff has now filed an amended complaint naming as Defendants only Kyle Wyckstandt and

the Blackhawk Area Task Force. Both Defendants have moved to dismiss. They assert that Plaintiff's allegations show that Officer Wyckstandt did not enter the Linke home. He obtained the warrant and planned the search operation, but played no role in carrying it out, apart from removing Gus from the premises and transporting him to the Sheriff's Office for his safety. Because BATF's liability is derivative of Wyckstandt's, Defendants argue that BATF must be dismissed as well.

What happened to Gus Linke is unacceptable. The court concludes, however, that Plaintiff has not alleged a basis for finding Officer Wyckstandt personally responsible for the wrongdoing. The motion to dismiss [87] is granted.

## BACKGROUND

The facts laid out below are taken from Plaintiff's Second Amended Complaint [86] ("SAC") and the parties' briefings, which the court accepts as true at the pleading stage. *Franco v. Chobani*, LLC, 184 F.4th 599, 602 (7th Cir. 2026). The court described relevant events in a previous ruling, *Linke v. Baits*, No. 23 C 50370, 2025 WL 2689922 (N.D. Ill. Sept. 19, 2025) (hereinafter, "*Linke I*"), and summarizes them more briefly below.

### I. Factual Background

This lawsuit emerged from the execution of a search warrant at the home of Clarence A. "Gus" Linke III in Morrison. Plaintiff Megan Linke is Gus's daughter and the executor of his estate. (SAC [86] ¶ 4.) At the time of the events alleged, Gus was 76 years old, suffered from Parkinson's disease and dementia, and required 24-hour care. (*Id.* ¶ 5.) Gus's son Aaron Linke was facing felony charges, but had been released on electronic monitoring so that he could assist in providing care for Gus. (*Id.* ¶¶ 8, 9.)

Defendant Kyle Wyckstandt, a police officer in Sterling, Illinois who was assigned to the Blackhawk Area Task Force, had information that Aaron Linke had been engaged in drug transactions while at his father's home. Wyckstandt sought and obtained a search warrant for the home and prepared a plan to execute the search. (*Id.* ¶¶ 16–17.) Wyckstandt and other

BATF members knew that Gus was elderly and suffered from dementia. (*Id.* ¶ 18.) The search plan thus called for Illinois State Police to execute the warrant, while BATF members were "on the perimeter," and that "subjects [would be] taken into custody to be transported to the Whiteside County Sheriff's Office." (*Id.* ¶ 19.) It also stated that Lifescape[1] would have a case worker at the sheriff's office to care for Gus. (Mem. in Opp. to MTD [92] at 3.)

Early in the morning of October 21, 2022, more than a dozen officers executed the search warrant. Things did not go well. The officers used flash-bank grenades in entering the premises. Shots were fired, striking Aaron Linke and another caregiver, both of whom later died from their injuries. Officers removed Gus from the home in a wheelchair, and "Defendant Wyckstandt and another officer carried Gus off the porch and placed him in a squad car to be transported to the Whiteside County Sheriff's Office." (*Id.* ¶¶ 29, 30.) Later that morning, Virginia Carmen—another of Gus's caretakers—found him in the back seat of a squad car parked behind Morrison Community Hospital, "wearing jail attire and . . .covered in his own urine and feces." (*Id.* ¶ 32.) Carmen took Gus to the Whiteside County Sheriff's Office, where he was questioned for approximately half an hour. (*Id.* ¶¶ 33, 34.) Within a week of the BATF operation, Gus's condition had deteriorated rapidly; he never returned home. (*Id.* ¶ 35.) Gus died on April 6, 2023. (*Id.* ¶ 36.)

## II. Procedural History

In her Second Amended Complaint, Plaintiff Megan Linke, executor of Gus Linke's estate, brings a Fourth Amendment unlawful detention claim against Wyckstandt under 42 U.S.C. § 1983. (*Id.* ¶¶ 37–41.) She also brings state law claims against Wyckstandt and BATF—under a theory of *respondeat superior*—for intentional infliction of emotional distress, battery, unlawful restraint,

[1] The parties have not provided details about Lifescape, but the court presumes this is a reference to Lifescape Community Services, an "agency in northwestern Illinois serving older adults, families, and caregivers." *See* https://lifescapeservices.org/ (last visited September 9, 2026).

willful and wanton conduct, negligence, and gross negligence. (*Id.* ¶¶ 42–63.) Finally, she asserts an indemnification claim against BATF. (*Id.* ¶¶ 64–66.)

In its earlier ruling, the court determined Wyckstandt was acting as a state officer for purposes of the alleged conduct, and dismissed state law claims on sovereign immunity grounds. *Linke I,* 2025 WL 2689922 at *3–6; *see* Mem. in Supp. of MTD [95] at 7; Mem. in Opp. to MTD [92] at 12–1. The constitutional tort claims against Wyckstandt were dismissed without prejudice. *Linke I*, 2025 WL 2689922 at *9. Plaintiff's SAC reasserts its claims against Wyckstandt, now characterizing him as a local law enforcement officer assigned to BATF. (SAC [86] ¶¶ 6–7, 42–63; Mem. in Opp. to MTD [92] at 12–13.) Defendants move to dismiss the SAC under Rules 12(b)(1) and 12(b)(6). (MTD [87] at 1.)

## LEGAL STANDARD

In their motion to dismiss, Defendants invoke Rule 12(b)(1), challenging the court's subject matter jurisdiction, and 12(b)(6), for the Plaintiff's failure to state a claim. The court is satisfied that it has jurisdiction over Plaintiff's Section 1983 claims, and focuses on Defendants' arguments that Plaintiff has not stated a claim.

At the pleading stage, the court accepts well-pleaded factual allegations as true and draws all reasonable inferences in Plaintiff's favor. *Lee v. City of Chicago*, 330 F.3d 456, 459 (7th Cir. 2003). To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a complaint must allege "enough facts to state a claim to relief that is plausible on its face." *Bowlin v. Bd. of Directors, Judah Christian Sch.*, 167 F.4th 469, 474–75 (7th Cir. 2026) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Put another way, the complaint must "offer 'factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Atlanta Gas Light Co. v. Navigators Ins. Co.*, 164 F.4th 1038, 1046 (7th Cir. 2026) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).

## DISCUSSION

### I. Fourth Amendment Unlawful Detention Claim

The Fourth Amendment protects against unreasonable searches and seizures. A seizure ordinarily requires probable cause, subject to narrowly defined exceptions. *Dunaway v. New York*, 442 U.S. 200, 214 (1979); *see also Patrick v. City of Chicago*, 81 F.4th 730, 736 (7th Cir. 2023) (collecting cases). As explained in *Michigan v. Summers*, 452 U.S. 692, 704–05 (1981), officers executing a search warrant may detain occupants in their home while conducting the search of the home, and *Muehler v. Mena,* 544 U.S. 93, 94 (2005) confirms that officers may question occupants during that detention, if the questioning does not prolong the detention. But the authority to detain recognizes in *Summers* is limited to the immediate vicinity of the premises; once an occupant leaves, "detentions must be justified by some other rationale." *Bailey v. United States*, 568 U.S. 186, 202 (2013). And once an occupant is transported elsewhere, the officer must have probable cause for the detention. *Dunaway*, 442 U.S. at 212–13, 216; *Muhammad v. Pearson*, 900 F.3d 898, 907–08 (7th Cir. 2018).

The parties have devoted attention in their briefing to the conduct of the search and to the decision to remove Gus from the scene and question him. Defendants contend that once guns were fired, the home became an active crime scene and that the absence of a caretaker for Gus justified his removal. (Mem. in Supp. of MTD [95] at 2–3.) They rely on *United States v. Vanichromanee*, 742 F.2d 340, 345 (7th Cir. 1984), and *Golla v. City of Bossier City*, 687 F. Supp. 2d 645, 658 (W.D. La. 2009), which recognize that relocation may be permissible for reasons of safety, security, comfort, or convenience and in exceptional circumstances. (Mem. in Supp. of MTD [95] at 3–4.) They also cite *United States v. Stewart*, 388 F.3d 1079, 1084–85 (7th Cir. 2004), which held that merely placing someone in a squad car does not transform a detention into an arrest. (Mem. in Supp. of MTD [95] at 2.) A district court case not cited by the parties, *Pike v. Foster*, No. 12 CV 00094, 2016 WL 537940, at *7 (N.D. Ill. Feb. 11, 2016), also recognized certain circumstances in which detention is permitted: citing *Vanichromanee*, *Pike* held that officers'

decision to handcuff, detain, and relocate plaintiff from a public street three blocks south of the crime scene did not amount to an arrest because the length of detention was not unreasonable, and plaintiff was transported for the purposes of identification, not further detention.

Citing *Bailey v. United States* and *Dunaway v. New York*, Plaintiff counters that Defendants lacked the necessary justification once Gus was removed from his home and that he was detained for custodial interrogation. (Mem. in Opp. of MTD [92] at 11.) She argues that Gus never should have been relocated. (Mem. in Opp. to MTD [92] at 7–10.) Instead, Plaintiff suggests, officers should have contacted someone with Power of Attorney for Gus or should otherwise have assured that a caretaker was available to him; she does not otherwise state what actions the officers should have taken under the circumstances. (SAC [86] ¶¶ 51, 60.)

The SAC plausibly alleges detention beyond what the case law allows. Though *Summers* made clear that police may detain and question occupants while located on the premises, the Court did not address detainment of occupants once they exited the premises. 452 U.S. at 703. *Bailey* addressed these circumstances and disapproved of the detention of a man found a mile away from a residence for which police had a valid search warrant. 568 U.S. at 1043. *Bailey* emphasized that "once an individual has left the immediate vicinity of the premises to be searched," detention of that individual requires additional justification. *Id.* In *Dunaway*, the Supreme Court found Fourth and Fourteenth Amendment violations when the police seized and interrogated the plaintiff without probable cause. 442 U.S. at 216. And *Pike* was limited to its circumstances: plaintiff was detained for no more than 20 minutes, and he was relocated for identification, not detention, purposes. 2016 WL 537940, at *7. In this case, Gus—who was not a suspect—was removed from his home, placed in a squad car, found later behind a hospital in jail attire and his own waste, and taken to the sheriff's office for questioning without his caretaker. (SAC [86] ¶¶ 29–34, 51.) Those allegations describe a detention outside the immediate vicinity of the search area. The court therefore disagrees with Defendants that "exceptional circumstances" resolve the claim.

But Wyckstandt himself cannot be held liable for a Fourth Amendment violation under 42 U.S.C. § 1983 unless his own conduct caused the violation. Section 1983 does not impose vicarious liability; Defendants are only liable to the extent they were personally involved in the Fourth Amendment violation. *Zemlick v. Burkhart*, 164 F.4th 1004, 1011 (7th Cir. 2026). Section 1983 also requires ordinary proximate causation, "which limits a defendant's liability to only those harms [they] foreseeably risked by [their] wrongful actions." *Passwater v. Pretorius*, 183 F.4th 531, 540 (7th Cir. 2026) (citing *Hunter v. Mueske*, 73 F.4th 561, 567–68 (7th Cir. 2023). These principles are relevant here. In her SAC, Plaintiff alleges that Wyckstandt swore out the affidavit, prepared the operations plan, and helped place Gus in the squad car. (SAC [86] ¶¶ 16–17, 30; Mem. in Supp. of MTD [95] at 5.) She does not suggest that Wyckstandt ever entered the home or that he was involved in Gus's detention or interrogation. The plan called for transportation to provide a case worker for Gus, not for Gus to be detained, questioned, or deprived of care. (Mem. in Opp. to MTD [92] at 2–3; Mem. in Supp. of MTD [95] at 5.)

The warrant and plan may have been but-for causes of the search in the sense that, had there been no search, Gus would not have been removed from the scene and then later abandoned in a squad car, but that is not enough. Plaintiff has not alleged that Wyckstandt directed or knew about the subsequent questioning or neglect/abuse; she instead suggests that the unacceptable outcome was foreseeable. Mem. in Opp. to MTD [92] at 5–6; *see Hunter*, 73 F.4th at 568. The cases she cites differ from this one, however, in that in those cases, plaintiffs identified the individuals who had themselves engaged in unconstitutional conduct: In *Herzog v. Village of Winnetka,* 309 F.3d 1041, 1043 (7th Cir. 2002), the named defendant officers arrested plaintiff without probable cause and then "without provocation or excuse [one officer] shoved the middle-aged female plaintiff to the ground and [another officer] refused to loosen the plaintiff's chafing handcuffs, both instances of excessive force . . . ." . In *Simmons v. City of Chicago*, plaintiff, a 67-year-old man who suffered from cerebral palsy and a speech disorder, was a visitor at a home when officers entered to execute a search warrant. No. 14 C 9087, 2017 WL 497755,

at *9–11 (N.D. Ill. Feb. 7, 2017). Though he was not the target of the search nor a threat, officers detained him on the floor face down and then held him at the police station for 17 hours. *Simmons*, 2017 WL 497755, at *3. The court concluded that plaintiff's arrest and detention were unlawful, but that only the officer directly involved in that arrest and detention, who could have foreseen the "indignities inflicted" on plaintiff, might be liable. *Id.* at *18. Officers who "played no role" in detaining plaintiff, or who "briefly detained" him but then "handed him off to officers unknown" could not reasonably have foreseen the unlawful conduct. *Id.* Similarly, in *Palmer v. Marion County*, 327 F.3d 588, 594 (7th Cir. 2003), the defendant sheriff had no knowledge of the circumstances resulting in injury to the plaintiff detainee, and the Seventh Circuit affirmed summary judgment in the sheriff's favor. In short, Section 1983 "does not allow actions against individuals merely for their supervisory role of others." *Doe v. Purdue Univ.*, 928 F.3d 652, 664 (7th Cir. 2019) (quoting *Zimmerman v. Tribble*, 226 F.3d 568, 574 (7th Cir. 2000)). The court concludes, as it did earlier, that Plaintiff has not made allegations supporting the inference that Wyckstandt "could have known or suspected that the execution of the warrant would violate the Constitution." *Linke I,* 2025 WL 2689922, at *7. Count I is dismissed.

**II. Qualified Immunity**

If the allegations were sufficient to state a claim against Wyckstandt at all, the court agrees with Defendants that he is entitled to qualified immunity. Qualified immunity shields officials from liability unless a plaintiff can show "(1) that the official violated a . . . constitutional right, and (2) that the right was 'clearly established' at the time of the challenged conduct." *Ashcroft v. al-Kidd*, 563 U.S. 731, 735 (2011)) (internal quotation marks omitted). "A right is clearly established when it is sufficiently clear that every reasonable official would have understood that what he is doing violates that right." *Zorn v. Linton*, 146 S. Ct. 926, 930 (2026) (internal citations and quotation marks omitted) (quoting *Rivas-Villegas v. Cortesluna*, 595 U.S. 1, 6 (2021)). The right at issue is "not clearly established if existing precedent does not place the constitutional question beyond debate." *Id.* at 930 (internal citations and quotation marks omitted) (quoting

*Rivas-Villegas*, 595 U.S. at 5). Dismissal at the pleading stage is appropriate when the facts alleged establish that "the defendant is entitled to qualified immunity as a matter of law." *Sabo v. Erickson*, 128 F.4th 836, 843 (7th Cir. 2025).

The facts alleged here are that Gus was a 76-year-old man with dementia who required constant care; Gus was not a suspect; the caregivers at Gus's home had been shot and were unable to assist him; after the shootings, the residence was an active crime scene; and Wyckstandt was involved in that he swore out the affidavit for the search, prepared the operations plan, helped place Gus in the squad car, and planned for a case worker to assist Gus at the sheriff's office. (SAC [86] ¶¶ 5, 18, 26–27, 30–31; Mem. in Opp. to MTD [92] at 2–3; Mem. in Supp. of MTD [95] at 1–3.)

Plaintiff has not identified controlling law clearly establishing that these circumstances violated the Fourth Amendment. *Bailey* and *Dunaway* place limits on detention, but neither addresses the relocation of a non-suspect with dementia from an active crime scene to a secure location for care. As explained above, *Simmons*, a district court decision, is not controlling and, in any event, does not support liability for officers who play a limited role in the alleged wrongdoing. One of the defendant officers briefly detained the plaintiff; a second handcuffed him before "handing [him] off to officers unknown," and the third "played no role" in the plaintiff's detention. *Simmons*, 2017 WL 497755, at *18. The three defendant officers "might well have expected [plaintiff] to be released from handcuffs once his statement was taken at the scene." *Id.* So too here, there is no basis for a finding that Wyckstand, considering his limited role in Gus's detention, could have foreseen the unacceptable events that followed execution of the search. At a minimum, Gus's constitutional rights were not "beyond debate," and the law was not "sufficiently clear" for Wyckstandt to "understand that what he [was] doing [was] unlawful." *Sabo*, 128 F.4th at 844 (cleaned up) (citing *District of Columbia v. Wesby*, 583 U.S. 48, 63 (2018)). Plaintiff has identified no case law holding that an officer must anticipate and protect against the possibility that a search warrant will result in gunfire or serious injuries to the only persons who could care

for a disabled individual, like Gus. Wyckstandt is therefore entitled to qualified immunity. The Section 1983 damages claim is dismissed with prejudice because qualified immunity bars relief.

### III. State Law Claims

Plaintiff's SAC characterizes Wyckstandt as a local law enforcement officer assigned to BATF. Taking that allegation as true, he was a local police officer simply carrying out an assignment for another agency. In addition, BATF's liability appears to be dependent on Wyckstandt's liability. Because there is no diversity jurisdiction and the only federal claim has been dismissed, the court dismisses the state law claims for lack of subject matter jurisdiction, without prejudice to proceed in Illinois courier.

### IV. BATF's Liability

The court finally considers BATF's liability. The SAC asserts only *respondeat superior* and statutory indemnification based on Wyckstandt's alleged liability. (SAC [86] ¶¶ 47, 52, 57, 62, 64–66.) Because no federal claim survives against Wyckstandt, any federal claims against BATF are dismissed.

## CONCLUSION

Defendants' motion to dismiss the Second Amended Complaint [87] is granted. All claims that cannot be brought in Illinois court are dismissed with prejudice. The Clerk is directed to enter judgment in favor of Defendants Kyle Wyckstandt and the Blackhawk Area Task Force and against Plaintiff.

ENTER:

Dated: September 24, 2026

REBECCA R. PALLMEYER
United States District Judge